Good morning. May it please the Court, Laura Zuckerman on behalf of the people of the State of California. With me at council table are my colleagues Tamara Paxman and Paul Stein. And I'd like to reserve four minutes of my time for rebuttal. These cases should be remanded to state court. First, because the Attorney General's unfair competition claim arises only under state law. Under Beneficial, Merrill Dow, Wander, and Utley, there is no federal subject matter jurisdiction. Second, sovereign immunity bars removal. The Attorney General here seeks civil penalties under a state statute that protects California consumers by authorizing penalties to punish and deter future violations of law. But in order to determine those penalties, don't you need to ask a court to in essence recompute a hypothetical rate as to what a just and reasonable rate would have been for each of the thousands of transactions that underlie your complaint? And why does that not directly conflict with the authority that Congress has given to the Federal Energy Regulatory Commission under the Federal Power Act? It does not, Your Honor, and let me explain why. These are unusual cases. No court will be asked to resolve any issue of federal law. Every issue of federal law in these cases either has been or will be resolved by FERC. But if the fact finder in your case were to determine that the rates that were charged were in fact just and reasonable, you would have no case, would you? Your Honor, the fact finder will not be required or even able to make that decision. It will not be. It is not and will not be. Your complaint says that the basis of the unfair business practices was the charging of rates which were not fair and just. I don't see how this case can proceed in Superior Court without a finding that the rates that were actually charged were neither just nor reasonable. And I just don't see how you avoid the conflict with what FERC is doing. Your Honor, we've made clear in our pleadings throughout the course of this litigation, if we have not made it adequately clear in our complaint, that we are relying solely on determinations made by FERC, and that to the extent necessary, we will stay the State court action to permit FERC to finish making whatever findings are necessary to the case. These cases explicitly ‑‑ I'm sorry, Your Honor. I suppose your threshold position is that even if you were violating the final rate, Doctor, and that wouldn't make the case removable. That's right, Your Honor. We get cases of artful pleading where someone takes a Federal claim and pleads it solely as a State matter, but this almost seems to be a deliberate case of inartful pleading where you pin the whole State action on a violation of Federal law. And I wonder ‑‑ Extension or something. What concerns me is that I understand the precedent on which you're relying, but most  of the time, there are two ways you can get into removal, and one is if the State claim just inevitably depends upon the resolution of a difficult question of Federal law, and the way you've pleaded the case, I don't see how you can decide it without saying that the case ‑‑ the State claim depends on ‑‑ solely on the resolution of a difficult question of Federal law. Your Honor, to the ‑‑ Which would make it removable. I'm sorry. To the extent our pleadings need to be clarified in the State court to make more explicit what our theory of the case is, we will, of course, do so. The cases to which you refer, which we maintain are arguably no longer applicable after beneficial, all require that the questions of Federal law not only be substantial and disputed, but be resolved by the fact finder, by the court. Here, there is no issue of Federal law for a court to resolve. As we have explained our case, we will be leaving to FERC those issues which are squarely for FERC to decide as Congress intended. The only issues for the court to resolve in these cases will be whether the predicate acts, the predicate violations of Federal law that FERC has found constitute unfair competition under California's unfair competition law, and the amount of penalties to be imposed. That leaves to FERC what Congress has left to FERC, which is the area of rate regulation, and leaves to the State's matters for State courts to decide. But aren't you really saying that you want more in terms of remedies than what FERC is refunds, or perhaps some prospective change in the way that these transactions are priced should occur? But you want more. You want punitive damages under the statute. And assuming that we find, in line with my earlier questions, that you're asking the jury or the judge to determine violations of California law based on violations of Federal law, why isn't the answer simply the only remedy that you have is to go to FERC and get those remedies and you just don't get the punitive damages? That's a consequence of the fact that Congress gave that authority to FERC. A couple of reasons, Your Honor. There are two different statutory schemes here with two different purposes. FERC's purpose is not to police unfair competition, just as the State of California's regulatory responsibilities do not include monitoring the energy markets. The cases make clear that imposition of remedies above and beyond what a statute permits does not necessarily make for preemption, number one. Number two, this is really very much like a case in which parallel criminal and civil proceedings are imposed for violations of the same conduct that implicate different interests. If businesses choose to do business as they're normally, that's done by the same sovereign, isn't it? That's right, Your Honor. But the State of California has made clear that for those businesses that wish to do business here, they must comply with all applicable laws, State and Federal, or they will be subject to additional penalties. They're assuming that we haven't preempted the field. Now, Your Honor, when you refer to preemption of the field, I'd just like to clarify something for a moment. There are two different types of preemption floating around in these cases, complete preemption and defensive preemption. I believe that you're referring to issues of defensive preemption. No, I was actually thinking of complete preemption. No court has found complete preemption under the Federal Power Act, and we maintain that there is none. So that basis for Federal removal jurisdiction simply is not present. Beneficial also makes clear that you obtain the relief that you seek, which I presumably could be billions, perhaps trillions of dollars, if you were completely successful, that that would directly impact on FERC in the sense that part of its rate-making authority has to look at the continued viability of the producers. And if you render them bankrupt or unable to function because they can't pay all the rates on the wholesale market, doesn't the commission have to take that into account as well? Well, Your Honor, the commission does not have any authority to do what it is not permitted to do under the Federal Power Act. But to answer your question more directly, there's no evidence in the record that would suggest that penalties would amount to billions of dollars or trillions. Well, I haven't worked the math, Ms. Zuckerman, but you're talking about literally thousands of commercial transactions. And if the retail rates or the wholesale prices that were paid is any indication, I mean, I looked at numbers in your briefing that indicated, you know, $20, $30 billion. So I'm not sure that my numbers are much bigger than what you're asking for. I don't think my hypothetical is unreasonable at all, if you're completely successful. That's right. But the state court judge also has the authority to use his or her discretion in ordering penalties. Those penalties can be reduced. I don't think we should But I'm not sure you're answering my question. My question is, the Federal Energy Regulatory Commission has to determine rates based, among other factors, on the financial viability of the wholesalers who generate the power. And if something has happened to cripple the economic viability of those entities, doesn't that directly interfere with the commission's efforts to set a just and reasonable rate? Your Honor, I believe this really is speculation just because your hypothetical assumes that the state court will find in our favor with respect to the financial violations constituting unfair competition, with respect to all of these defendants, and will not reduce the amount of the penalties. It's not really an issue before us here. I'd also like to See how we can decide the case of preemption without doing some forecasting as to what the effect of this parallel proceeding might be on the commission's jurisdiction to set just and reasonable wholesale power rates. Your Honor, I'd like to remind the Court that we don't even get to the issue of defensive preemption if the Court has no jurisdiction to decide the issues in the first place, which we maintain it does not. There's simply no basis for Federal question jurisdiction here. And the issues of defensive preemption are issues that a state court is quite competent to struggle with. I have every expectation that we will continue to litigate these issues in state court. I'd also like to point out with respect to your question about the two regulatory schemes, that not only is the purpose of the Federal Power Act different from the The remedies at FERC go to sellers and buyers. They are primarily refunds. Declaratory relief is a remedy as well. FERC has no authority to order civil penalties for this type of conduct. As the Court has pointed out, this is more in the nature of punitive damages. The Supreme Court recently clarified in Beneficial v. Anderson that a state claim may be removed to Federal court under only two circumstances, when Congress expressly so provides or when a Federal statute wholly displaces the state law cause of action through complete preemption. Thus, absent an express removal provision or complete preemption, which requires a Federal cause of action and clearly expressed congressional intent to displace state law, a state law cause of action And as Your Honor pointed out, this is not a case in which there the cause of action exists only under Federal law. There is no such cause of action under Federal law. There is no dispute in this case about that. We could not bring this claim in Federal court. How do you distinguish the, it was the Illinois College of Surgeons which came after Beneficial, I think. That's right, Your Honor. Nothing in Beneficial limits its application to cases in which, to cases of complete preemption, on the one hand, or cases in which there is no mention of Federal law. In the International College of Surgeons case, if I recall the facts correctly, there was a direct Federal issue with the state of Illinois which was a constitutional challenge. The cause, I mean, if you use the phrase, you know, which, was it the state or the Federal government that provided the initial cause of action, I think the initial cause of action arguably there was a sort of a state administrative procedure act which created cause of action. I guess the claims were straight Federal or at least some of them were. That's right. And I don't recall if it was a removal case, but I do recall that the Federal interests in that case were significant. And I believe that case involved a constitutional challenge to Federal law. Well, I guess what's troubling me is, are you suggesting there is no Federal interest here with respect to removal? I am suggesting that there is no Federal interest in this case that is sufficient to permit removal under established principles of removal jurisdiction. It's all a defensive matter. That's right, Your Honor. This case is really about jurisdiction, but defendants have conflated concepts of defensive preemption with complete preemption, which would be the only possible type of preemption. Well, they don't accept your view of beneficial. It's true that you quoted it right when you said there are only two ways to remove, but they would put that in the context of that particular kind of a removal and narrow it and say that the Supreme Court really wasn't overruling its other line of authority. Well, I'm not sure that the other precedent – I'm not sure that the other precedent would be overruled by beneficial in any event. And I'm not sure that it was inconsistent, necessarily inconsistent with beneficial, but in any event, there's simply no language in the case that would support such a limit on its application. The Second Circuit in the City of Rome and a number of other recent cases have adopted the same interpretation of beneficial, Your Honor, and we believe it's quite clear from the language of the case. Do you – in your brief, you made a point, as I recall, of the Eleventh Amendment. That's right, Your Honor. Are you – you haven't mentioned it here. Are you – I'd be happy to. Even if there were a basis for removal jurisdiction in these appeals, longstanding principles of sovereign immunity prevent removal absent the State's consent to Federal jurisdiction of suits brought by a State and State court. This is because the principles of sovereign immunity are founded on respect for the dual sovereign status of the States and the Federal Government and on respect for the State's dignitary interests. Forcing a State that chooses to vindicate its rights under State law to litigate in a Federal forum is no less offensive to the State's sovereign interests or to principles of Federalism than is hauling a State into Federal court to participate as a defendant. What is your authority for that? We rely on the Hans v. Louisiana line of cases, continuing through Alden v. Maine and Federal Maritime Commission, that do not resolve this exact issue, Your Honor, and it has not been resolved by the Ninth Circuit. But we rely on the principles and the reasoning of those cases. We also rely on the Thomas v. F.A.G. Barings case, which made clear that involuntary joinder was an affront to State sovereignty, even involuntary joinder of a State that was to be realigned as a plaintiff, because it forced the State to prosecute an action at a time and in a place not of its choosing. Defendants have relied in their briefing on the Supreme Court cases in Ames and Illinois and a number of lower court cases that follow those cases, but those were not sovereign immunity cases, Your Honor. They dealt with distinct issues. There is language in those cases that has been relied on and quoted, often without significant substantive analysis, but those cases do not govern here. I'd like to reserve unless there's a question. Never mind. Thank you. We'll give you a little uptime. Thank you, Your Honors. My name is Terry Houlihan of the firm of Bingham McCutcheon. I represent the reliant defendants in this case. I'll be taking half the time this morning to address the removal questions. Mr. Gordon Erstbommer of Morrison and Forster will take the remaining half to address the defense's primarily filed rate in preemption. We've heard a lot this morning about all of the litigation that's been engendered by the so-called energy crisis. One thing we think you can do to advance the cause of resolving those matters is to affirm the district court below in this case and in the case that follows. That will resolve one of the problems that has kept these matters in litigation for four years, the uncertainty surrounding claims filed outside of FERC, essentially raising issues that are before FERC to be resolved. FERC, we think, is the forum with jurisdiction to deal with these problems, to determine whether remedies are called for and what they should be. In this case, my task is to address the question of whether the case was properly removed. I think there are three bases for concluding that it was. One, that on the face of the complaint, it seeks to enforce federal rights that give rise to jurisdiction under 16 U.S.C. Section 825P. I think, Judge Camby, that your question about the nature of the complaint illustrates that point. The second is that, in fact, this is a case where the so-called complete preemption doctrine would justify removal. The third is that under the artful pleading doctrine, one of the branches recognized by this Court in Lippitt is that there are certain claims that are, quote, inherently federal, close quote, justifying removal. This, we submit, is one of those claims. Does that category require that there actually be a federal cause of action that sort of is offered as the substitute or the controlling one? It's that category. I don't believe so. My recollection is that Lippitt indicated that it was not necessary that there be a federal cause of action for removal on that doctrine. Now, it may be that you are limiting the situation to the context where there is a separate jurisdictional statute, but ‑‑ Well, Lippitt, it seems to me, said you don't need a federal cause of action to sustain removability generally. But most of the cases where they say, well, look, this is just inherently federal are cases where the federal government has offered not only has probably exclusive jurisdiction, but it also offers a cause of action itself under federal law. If you accept the proposition that a federal cause of action is not necessary to removal under the federal question doctrine, or under 1331, and I think you have to if you accept, for example, the complete preemption doctrine that the Supreme Court acknowledged in beneficial. Then the question becomes, well, why is it necessary that there be a federal private right of action for this particular branch? I submit that it isn't, but that what has happened is that at least in the past, cases that are easily seen as inherently federal have been those where there is a private right of action under the federal statute. But here we have a classic, I think, example of a situation where you have an inherently federal claim. The underlying claims are violations of the Federal Power Act. But you don't happen to have a federal cause of action. You have instead a federal administrative remedy at FERC, which I think makes the case even more inherently federal than if there were a separate private right of action in federal court to enforce the Federal Power Act directly. What does FERC let you do as a private complainant? Well, specifically in this case, the first cause of action is based on the failure to file rates and tariffs in the appropriate form at FERC. That specific claim, the attorney general also filed in a complaint proceeding at FERC, and it's now on appeal before this court in the related case, docket number 0273093. The other thing, the second cause of action is charging rates that were neither just nor reasonable. Again, that issue is before the FERC in the so-called refund proceeding, where they're reviewing all the rates to determine what refunds are appropriate. And these are all wholesale rates, right? We're not talking about claims by an individual homeowner who would have no legal cause of action to either intervene before the commission or to bring some kind of a private claim for damages based on an unfair and unjust wholesale rate, correct? That is correct. There is language in the briefing in which the attorney general suggests this is a consumer protection case that he's filed, but in fact it has nothing to do with retail rates. Many of the retail rates were frozen during this period, so there was no direct effect from the high wholesale rates at the retail level. And I think most importantly, what's the remedy he's seeking? The only remedy he's seeking is fines. Well, those aren't going to the retail electric customer either. Did I read somewhere that half goes to the state and half goes to the county where the action? Yes. And is that provided by state law or just some kind of? That's my understanding, yes. How does a county volunteer to get one of these? The time seems to be passing quickly. Let me make a couple of brief points. Under Lippitt and Sparta, this case is removable because it seeks to enforce rights under the Federal Power Act. The complaint is fairly specific about that. The theory of the complaint is that because the Federal Power Act was violated, that automatically gives the Attorney General a claim under Business and Professions Code Section 17200 for unlawful business conduct. There's no claim that the conduct was unfair. There's no claim that the conduct was fraudulent. Unlike Lippitt, this is simply a case that, like Sparta, the allegation is based on the Federal law. Therefore, under Sparta and Lippitt, it's removable. Beneficial bank. Let me reply briefly to the argument based on beneficial bank that the only removal exception left now is complete preemption. I think that's not a possible reading of beneficial bank, given this Court's subsequent case in Lippitt, which recognized exceptions other than the complete preemption exception. The Second Circuit's decision in Rome has some broad language, but I've submitted to your honors today a new Second Circuit decision in Bracey v. Board of Education, just issued May 11th, 2004. In that case, decided months after Rome, the Second Circuit upheld jurisdiction in a case on a theory that the state law claim, quote, And in the process, it reaffirmed the Second Circuit's d'Alessio v. New York Stock Exchange decision discussed in Lippitt by this Court. So the Second Circuit also has clearly now indicated that it does not believe that beneficial changed the law in the way that the Attorney General has argued. What do you do with a very strong statements in Merrill Dow? I just argue that it couldn't have meant what it said because too many cases have gone since. I think that there are a couple of things you can do with it. And basically, you've already done it in Sparta and Lippitt. But basically, under 16 U.S.C. Section 825 P, it doesn't say that the cause of action has to arise under federal law. It says if you seek to enforce a right created by the Federal Power Act, the federal court has jurisdiction over the matter. And so there's a statutory difference that you could use if you have to distinguish Merrill Dow. I would also say that the complete preemption cases that the Supreme Court does recognize are cases where there is no federal right of action. So Merrill Dow is somewhat inconsistent with those cases. My time is up. I just want to mention in closing that on the Eleventh Amendment point, there is a second Magnolia decision out of the Tenth Circuit, which reviews all those Supreme Court cases that the Attorney General says expands the doctrine of sovereign immunity beyond the bare language of the Eleventh Amendment. It decides that those cases have not applied sovereign immunity in any case in which the state is a plaintiff. And it adheres to that distinction in the Eleventh Amendment language. Thank you. May it please the Court, my name is Gordon Erspommer, and I represent the defendants in four of the separate actions filed below by the Attorney General. I'm dealing here today with the merits issues, preemption, filed rate, and the collateral attack doctrine. This case is, of course, just one aspect of a very long turf war between FERC and the State of California and the AG, taking place both at Congress, at FERC, and in other courts, but generally reflecting the Attorney General's dissatisfaction with actions taken by FERC during the state's energy crisis. One of those cases, Locker v. FERC, was argued before this Court last summer and directly involves the underlying proceeding that gives rise to one of the causes of action in this case. In fact, it duplicates it almost completely, and it has to do with the non-filed rate part of the complaint in this case. Under the collateral attack doctrine, the Attorney General has to appeal decisions made by FERC up through the courts in the manner prescribed by federal statute, and under both the statute itself and the City of Tacoma case that we cited to the Court, they cannot collaterally attack those decisions by bringing a separate action, and both of these causes of action constitute collateral attacks on different FERC proceedings. In the case of the just and unreasonable rates, those proceedings before FERC, the so-called refund proceedings, are incomplete at this time. In the case of the non-filed rate portion of the complaint, as I mentioned, that has already been appealed in the Ninth Circuit. So even before you get into the doctrines of preemption and filed rate doctrine, this case is barred. Turning, though, to the major arguments here, the State argues that it, having been unsuccessful at FERC largely in its quest, can now step in and attempt to enforce the Federal Power Act. The State offers three basic arguments as to why the Ninth Circuit should revive its claim. The first is really a fiction, a legal fiction, that there's a dual regulatory scheme of regulation over wholesale power markets, State and Federal. In fact, that is not the case, as has been shown in a long line of Supreme Court cases. Rather than being in an area of concurrent jurisdiction, there is a dichotomy, a wholesale regulation being regulated by the Federal Government and the retail by the State Government. And, in fact, this whole argument was completely rejected in another case brought by a California State entity, and that was PUC of California v. FERC, where the Court said, First, we must correct California's assumption that FERC's and its jurisdiction are concurrent. That's 900 FEDSEC 274. We also have the Supreme Court cases about the bright line test. And, basically, the AG has argued in this case that, instead of the bright line test, it would like this Court to substitute what you might call the fuzzy line test, where there's an area of concurrent jurisdiction. There simply is not an area of concurrent jurisdiction, and we cited a dozen Supreme Court and Ninth Circuit cases in our brief to establish that. The second major argument is what might be called the Attorney General's theory of inverse preemption. And I say inverse preemption because their argument, basically, is that under the State unfair competition law plank, which describes unlawful acts, the Attorney General can, in effect, swallow the entirety of the federal code. Any federal violation can be a basis for a State cause of action. Now, when you think about the implications of that argument upon various federal statutes, take it national defense, immigration, environmental, foreign trade, tax, labor, yes, even the Mann Act, there are thousands and thousands of federal statutes. And if the State is correct that it can enforce all those federal statutes via the 17-200 unlawful plank, it would, in effect, turn every case into a State case under what they would argue are the traditional police powers or consumer issues or health and welfare types of issues. It simply proves too much. It cannot be the case that State law can swallow federal law. It has enough problems, there's enough problems with that argument to begin with in just the traditional federal case. When you apply it in the case where there is federal preemption and there's a federal statute, several federal statutes which provide for exclusive jurisdiction over the claims, I think the flaws in the argument become apparent. The third major argument they make, and this is largely in the brief, but it was repeated somewhat in the argument, is that the State in effect here is attempting to help or assist FERC by enforcing FERC decisions that have already been made, and therefore no judge or court would have to make any determinations as to an unreasonable rate. Well, that's simply not the case. It's not pled, the complaint is not pled that way. If you look specifically at the complaints, and they're all virtually identical, you'll find that the time period for which the remedies are being sought is far more extensive in time than involved in the FERC proceeding. In the FERC proceeding, there was a refund effective date. This is set, I think, late in 2000. If you look at paragraph 35 and 39, for example, of the Idaho power complaint in this case, which is on the excerpts of record at 126, you'll find that they seek remedies back to 1999. Not only has the AG disagreed with the time frame for which remedies might be sought, in the request for judicial notice you'll see that they're also contesting the types of transactions that should be subject to refund. They're contesting the geographical scope of the refunds. And there are a whole series of different inconsistencies. It wouldn't refund before 2000, I think. Pardon me? FERC went back only to 2000, I think. FERC went back only to 2000 because of the federal statute established in a federal refund date. Okay, that's what I wanted to know. Yeah, and they set it, I believe it's November or December, I forget the exact month, in 2000. October. October, yeah, I think you may be right. It might have been October. But, you know, you can hardly think of a case where it would constitute more of a conflict or potential conflict with determinations made by FERC, because if you just look at the substantive provisions being urged by the Attorney General with respect to this energy crisis, almost everything they've asserted is inconsistent with the rulings and critical of the rulings made by FERC. Do you find in any of the complaints any assertions that could be viewed as independent of violations of federal law? None. The way these have been framed, and whoever said it may have been you, that this is a, the way you described it in terms of the. . . Everything in this complaint is predicated on the violation of federal law. There are two particular planks of causes of action. One is based on unjust and unreasonable rates, and the other is based upon what we call the filed rate doctrine. But each of these causes of action has specific predicates in the federal statutes, which provide for exclusive jurisdiction. I think the cases I already mentioned are the sections of the statute which relate to unjust and unreasonable rates. But the failure to file issue was taken up in 16 U.S.C. 824d, small c. And I think the very fact that they filed these cases at FERC initially, the very same cases, one by way of a motion with respect to the unjust and unreasonable rates, and the other with respect to the unfiled rate complaint. Okay. Some of your arguments get a little sweeping here. What is the, what is the narrowest ground in which you could, you think you could win? Well, I think there are independent, there are independent grounds, as you, as you, as you stated. I think the federal preemption based upon field preemption is certainly one possibility. The filed rate doctrine is really an aspect of preemption, and especially with respect to the unjust and unreasonable rates, that just fits very, very closely. I think you could dispose of them really probably most narrowly on the collateral attack doctrine, if you didn't want to get into the question of preemption, or the filed rate doctrine. But I think all of them apply, and they probably all apply in a similar way, because they're all preclusive doctrines of one type or another. You have used your time. Okay. Thank you. Very briefly. I'd like to make a few points in response. First of all, there's no turf battle here. The Attorney General is seeking those remedies in the FERC proceeding that he can get in the FERC proceeding and is enforcing his rights under a separate State statute to obtain different remedies. The issues in the FERC proceeding which is on appeal at this to this Court are different. There is some overlap, but they are different issues, and we are properly litigating those issues elsewhere. So the collateral, the collateral attack argument is really a red herring. I'd just like to address Lippitt and Sparta. The holding in Lippitt actually supports our case because the Court remanded the case, finding it sought only to enforce State unfair competition law and did not violate Federal law. That is the case here as well, Your Honor. The only evidence of just and reasonable rates will be a FERC finding on that subject. We submit that even if the Court decides not to follow beneficial, Merrill Dow controls here. In fact, this is a stronger case than Merrill Dow because the State court will not be deciding any issues of Federal law. With respect to Sparta, even if it were still good law after beneficial, Lippitt has limited it to cases involving self-regulatory organizations that do not have external obligations governing their conduct. That's, again, not the case here. We have the State's law which requires that businesses in the State comply with all I also wanted to just go back to Judge Tolman's hypothetical. The same would be true of any State environmental statute or any other type of statute, and there would be no suggestion that the matters would be preempted because the State is entitled to impose penalties for environmental violations. I'd also like to reiterate that Is that the same? I'm looking, for example, at your complaint, paragraph 52 on page 11, your concluding sentence. Each and every rate charge or price charged by defendants in violation of the Federal Power Act is unfair and unreasonable and, therefore, unlawful. That pretty clearly lays out that a predicate for a 17-200 violation is a violation of the Federal Power Act. I can see how it could be read that way, Your Honor, and we have gone on record and would be stopped from arguing anything different. We've tried to make clear that our case does not involve a determination by a court that the rates were unjust and unreasonable. To the extent we need to clarify our pleading, and after today, it's certain. I don't think there's anything that needs to be clarified, counsel. It's very clear the way you set it out, and you're stuck with your pleading, whether artful or inartful. Can I make one last comment? You may briefly comment, and then we'll hear from you. Okay. I would just also like to point out that with respect to Section 825P, with which defendants make much, Pan Am versus Superior Court squarely held that an identical provision in the Natural Gas Act did not provide an independent source of Federal question jurisdiction. Thank you, Your Honor. Thank you. The case just argued is submitted for decision. We'll hear the next case, which is Public Utility District of Snohomish County versus Dinergy Power Market.
judges: Schroeder, Canby, Tallman